# No. 22-2107

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

LARRY MUFF, Executor of the
Estate of Joseph A. Muff,

     Plaintiff-Appellant,

v.

WELLS FARGO BANK, N.A.,

     Defendant-Appellee.

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## HONORABLE C.J. WILLIAMS

## BRIEF OF APPELLANT

Gail E. Boliver (AT0001032)
BOLIVER LAW FIRM
2414 S. Second Street
Marshalltown, IA 50158
(641) 752-7757 Telephone
boliver@boliverlaw.com


Attorneys for Appellant Larry Muff, Executor of the Estate of Joseph A. Muff

1

## SUMMARY OF THE CASE

Mr. Joseph A. Muff[1] was the victim of elder abuse perpetrated against him by his step-son. His step-son stole over $700,000 from Mr. Muff using Wells Fargo as the money-laundering vehicle. Wells Fargo failed to detect the thefts from the accounts in their custody as required by regulation. Mr. Muff died within months of discovering the thefts and his Estate, by and through executor, Larry Muff filed a Petition in state court (Crawford County) against Wells Fargo and the case was removed to the U.S. District Court for the Northern District of Iowa.

The Court erred when it granted summary judgment to Wells Fargo and when it denied Mr. Muff's request to Amend his Complaint.

Mr. Muff requests a 20-minute oral argument to explain why Wells Fargo Bank should be held accountable for the losses to Mr. Muff and that the Court's Order has broad negative implications for potential criminal activity and the growing problem of elder abuse/exploitation.

---

[1] The Plaintiff in this case was "The Estate of Joseph A. Muff, by Executor, Larry Muff". However, since the District Court referred to Joseph Muff as "Mr. Muff" and the Plaintiff, this brief will address the Plaintiff as "Mr. Muff".

1

# TABLE OF CONTENTS

Summary of the Case ................................................................. 1

Table of Contents ................................................................... 2

Table of Authorities................................................................. 3

Statement of Jurisdiction........................................................... 6

Statement of the Issues............................................................. 7

Statement of the Case .............................................................. 8

Summary of the Argument ...................................................... 17

Introduction........................................................................ 18

Argument............................................................................ 22

    Argument I:  The Court Erred in Granting Wells Fargo's
    Motion For Summary Judgment on Counts 2 and 3 of The
    Complaint ..................................................................... 22

    Argument II: The District Court Erred in Granting
    Wells Fargo's Motion For Summary Judgment on Count 1 of the
    Complaint ..................................................................... 32

    Argument III: The Court Erred in Denying Mr. Muff's Motion to
    Amend His Complaint.................................................... 54

Conclusion ......................................................................... 61

Certificate of Compliance ...................................................... 64

Certificate of Compliance ...................................................... 65

Appellate Case: 22-2107     Page: 3     Date Filed: 07/08/2022 Entry ID: 5175654

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

*Baldwin v. Estherville*,
333 F.Supp.3d 817 (N.D. Iowa 2018) ....................................................56

*Becker v. Univ. of Neb.*,
191 F.3d 904 (8th Cir. 1999)..............................................................56, 57

*Community Voice Line, LLC v. Great Lakes Comm. Corp.*,
18 F. Supp.3d 966 (N.D. Iowa 2014) .....................................................37

*Dennis v. Dillard Dept. Stores, Inc.*,
207 F.3d 523 (8th Cir. 2000)..............................................................56, 58

*First National Bank v. Curran*,
206 N.W.2d 317 (Iowa 1973) ................................................................26

*Fuller v. Secretary of Defense*,
30 F.3d 86, 88 (8th Cir. 1994).................................................................54

*Gunsaulis v. Tingler*,
218 N.W.2d 575 (Iowa 1974) ................................................................26

*Hallett Const. Co. v. Meister*,
713 N.W.2d 225 (Iowa 2006) ................................................................51

*Hammer v. City of Osage Beach*,
318 F.3d 832 (8th Cir. 2003)..............................................................56, 57

*Home Indemnity Co. of N.Y. v. State Bank of Fort Dodge*,
8 N.W. 2d 757 (1943) .........................................................................35, 45

*Husker News Co. v. South Ottumwa Sav. Bank*,
482 N.W.2d 404 (1992) ............................................................................44

*In re Est. of Bearbower*,
426 N.W.2d 392 (Iowa 1988) .......................................................32, 37, 46

3

*In Re Estate of Thomann*,
649 N.W.2d 1 (2002) ................................................... 26

*Nationwide Agribusiness v. Structural Restoration*,
705 F.Supp.2d 1070, 1077 (S.D. Iowa 2010) ........................... 20

*Phariss v. Eddy*,
478 N.W.2d 848 (Iowa Ct. App. 1991) .............. 24, 29, 30, 31, 35, 45, 46

*Roederer v. J. Garcia Carrion, S.A.*,
569 F.3d 855, 858 (8th Cir. 2009) ............................... 22, 32

*Ryan Companies US Inc., v. FDP WTC, LLC*,
2022 WL 469336 ....................................................... 40

*Shams v. Hassan*,
905 N.W.2d 158 (Iowa 2017) .......................................... 20

*Smith v. Stowell*,
125 N.W.2d 795 (1964) ............................................... 40

*Stotts v. Eveleth*,
688 N.W.2d 803 (Iowa 2004) .......................................... 20

*Waukon Auto Supply v. Farmers & Merchants Sav. Bank*,
440 N.W.2d 844 (1989) .................................. 29, 30, 34, 44

*Williams v. Little Rock Mun. Water Works*,
21 F.3d 218 (8th Cir. 1994) ......................................... 56

*Williams v. Williams*,
100 N.W.2d 185 (1959) ............................................... 26

*Zutz v. Nelson*,
601 F.3d 842 (8th Cir. 2010) ..................................... 59, 60

4

**Statutes**

Iowa Administrative Code (IAC) 701 IAC 86.5(8)(c) .............................. 26

Iowa Code § 554.3419(1)(c) (1991) ......................................................... 33

Iowa Code § 554.3419(3) ........................................................................ 24

Iowa Code § 554.3420 ........................................................ 24, 29, 33, 35

Iowa Code § 554.4111 .............................................................................. 50

Iowa Code § 614.4 .................................................................................... 50

Iowa Code § 614.1(4) ............................................................................... 50

Appellate Case: 22-2107    Page: 6    Date Filed: 07/08/2022 Entry ID: 5175654

# STATEMENT OF JURISDICTION

(A) The United States District Court for the Northern District of Iowa had jurisdiction over this matter pursuant to 28 U.S.C. §1332(a).

(B) This Court has jurisdiction under 28 U.S.C. §1291.

(C) Order granting Wells Fargo's Motion for Summary Judgment was entered in the U.S. District Court on May 2, 2022. Judgement was entered dismissing The Estate's case on May 2, 2022. The Estate timely filed its Notice of Appeal on May 25, 2022.

(D) The Estate appeals from the final Order granting Wells Fargo's Motion for Summary Judgment dated May 2, 2022.

Appellate Case: 22-2107    Page: 7    Date Filed: 07/08/2022 Entry ID: 5175654

# STATEMENT OF THE ISSUES

1. **The District Court Erred in Granting a Motion for Summary Judgment on Count 1 of the Complaint.**

    Most Apposite Cases:

    *Husker News Co. v. South Ottumwa Sav. Bank*, 482 N.W.2d 404

    (1992)

    *In re Est. of Bearbower*, 426 N.W.2d 392 (Iowa 1988)

    *Phariss v. Eddy*, 478 N.W.2d 848 (Iowa Ct. App. 1991)

    *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, (1989)

2. **The District Court Erred in Granting a Motion for Summary Judgment on Count 2 of the Complaint.**

    Most Apposite Cases:

    *Home Indemnity Co. of N.Y. v. State Bank of Fort Dodge*, 8 N.W. 2d 757 (1943)

    *Phariss v. Eddy*, 478 N.W.2d 848 (Iowa Ct. App. 1991)

    *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, (1989)

3. **The District Court Erred in Granting a Motion for Summary Judgment on Count 3 of the Complaint.**

    Most Apposite Cases:

    *First National Bank v. Curran*, 206 N.W.2d 317 (Iowa 1973)

*Gunsaulis v. Tingler*, 218 N.W.2d 575 (Iowa 1974)

*In Re Estate of Thomann,* 649 N.W.2d 1, (2002)

*Williams v. Williams*, 100 N.W.2d 185 (1959)

## 4. The District Court Erred in Denying Mr. Muff's Timely Application to Amend the Complaint.

<u>Most Apposite Cases:</u>

*Dennis v. Dillard Dept. Stores, Inc.*, 207 F.3d 523 (8th Cir. 2000)

*Zutz v. Nelson*, 601 F.3d 842 (8th Cir. 2010)

## STATEMENT OF THE CASE

This case is an appeal from a denial of the plaintiff's (hereinafter "Mr. Muff") Motion to Amend Complaint and Order granting a Motion for Summary Judgment filed by Defendant (hereinafter "Wells Fargo") in which the Court dismissed Mr. Muff's three counts of conversion based upon Wells Fargo's misdirection of facts and law which the Court accepted contrary to the overwhelming evidence presented by Mr. Muff. (This Brief will follow the analysis in the order presented in the Court's Order which begins with Mr. Muff's Counts 2 and 3 followed by 1.)

Following initial discovery, Mr. Muff timely filed a Motion to Amend his Complaint to add elder exploitation, violations of industry standards as found in the Uniform Commercial Code (UCC) Articles 3

8

and 4 and a request for punitive damages on October 6, 2021. (J.APP. 0142, R.Doc. 21). The Magistrate Judge denied Mr. Muff's Motion to Amend on October 7, 2021. (J.APP. 0150, R.Doc. 22). Mr. Muff refiled his Motion to Amend on October 7, 2021. (J.APP. 0151, R.Doc. 23). The Magistrate Judge denied said motion on November 8, 2021. (J.APP. 0198, R.Doc. 30). Mr. Muff appealed the Magistrate's Order to the District Court Judge on November 17, 2021. (J.APP. 0203, R.Doc. 31). The District Court Judge denied Mr. Muff's Motion on December 28, 2021. (J.APP. 0289, R.Doc. 38). Mr. Muff filed a Motion to Reconsider on January 3, 2022. (J.APP. 0304, R.Doc. 39). The District Court denied Mr. Muff's Motion to Reconsider on February 10, 2022. (J.APP. 0613, R.Doc. 60).

Wells Fargo filed a Motion for Summary Judgment on February 3, 2022 (J.APP. 0329, R.Doc. 51) including its Statement of Material Facts (J.APP. 0334, R.Doc. 51-1); and Appendix (J.APP. 0345, R.Doc. 51-2). Wells Fargo filed their Brief In Support (J.APP. 0584, R.Doc. 52-1) and Sealed Appendix (S.APP.001, R.Doc. 53) on February 4, 2022. Mr. Muff resisted said Motion on March 1, 2022 (J.APP. 0618, R.Doc. 63) including his Brief in Support of Resistance (J.APP. 0622, R.Doc. 63-1);

Response to Statement of Material Facts (J.APP. 0642, R.Doc. 63-2);
Statement of Additional Material Facts (J.APP. 0648, R.Doc. 63-3);
Appendix (J.APP. 0658, R.Doc. 63-4) and Sealed Appendix (S.APP. 509,
R.Doc. 64). The Court entered its Order granting Wells Fargo's Motion
for Summary Judgment on May 2, 2022. (J.APP.1274; R.Doc. 73). Mr.
Muff timely filed his Notice of Appeal on May 25, 2022 (J.APP.1296;
R.Doc. 75).

Mr. Muff was the victim of fraud and theft perpetrated against
him by his stepson, Tadd Joshua Paige (hereinafter "Josh") (J.APP.
1172 – 1188, R.Doc. 63-10). Wells Fargo aided in the fraud and theft by
failing to warn Mr. Muff of the unauthorized transactions in his
accounts. (J.APP. 0691, R.Doc. 63-4). Josh increased his thefts in 2015
by forging checks from other financial institutions made payable to
Muff, depositing them into a joint account Mr. Muff held with Josh's
mother Joyce Paige Muff (hereinafter "Joyce" Mr. Muff's wife) at Wells
Fargo and then transferring the money to himself – all without the
knowledge of Mr. Muff. (J.APP. 0735 – 1075, R.Doc. 63-8; J.APP. 0721
– 0727, R.Doc. 63-4) (S.APP. 018-035, R.Doc. 53). In addition to the
thefts from Mr. Muff's bank accounts, Josh also fraudulently opened a

credit card account with Wells Fargo in 2013 in the name of Mr. Muff who had no knowledge of the card. (J.APP. 0662, R.Doc. 63-4) (J.APP. 0696, R.Doc. 63-4) (S.APP. 033, R.Doc. 53). When a brother of Mr. Muff's got suspicious he reported his suspicions to Wells Fargo and an investigation was commenced. (J.APP. 009, R.Doc. 53); (J.APP. 0674, R.Doc. 63-4). The Crawford County Sheriff's Office began their investigation by requesting records from Wells Fargo. (S.APP. 019, R.Doc. 53). When Mr. Muff's brother Tom alerted Wells Fargo to the potential thefts, Wells Fargo did their own investigation and in January, 2018 found that Josh had perpetrated a fraud against Mr. Muff and had made unauthorized transactions in Mr. Muff's accounts. (J.APP. 0680 – 0691, R.Doc. 63-4) (S.APP. 010, R.Doc. 53). But Wells Fargo never alerted Mr. Muff to their findings nor provided law enforcement with their report. (J.APP. 0691, R.Doc. 63-4). Josh was arrested, charged, and convicted of the thefts from Mr. Muff. (J.APP. 1172 – 1188, R.Doc. 63-10). In his criminal case he admitted that he performed fraudulent actions and thefts against Mr. Muff in an effort to steal his money and that Mr. Muff was unaware of his actions or the amount of loss of $770,000. (J.APP. 1172 – 1188, R.Doc. 63-10).

Appellate Case: 22-2107   Page: 12   Date Filed: 07/08/2022 Entry ID: 5175654

Mr. Muff died on September 23, 2018. (J.APP. 1077, R.Doc. 63-8). The Estate of Joseph Muff commenced a case in the Iowa District Court for Crawford County against Wells Fargo and the case was removed to federal court. Mr. Muff moved to amend his complaint to add additional causes of action. (J.APP. 0142, R.Doc. 21). Namely, the amendment was to add negligence (under the industry standard of the UCC and bank regulations), elder exploitation and a claim for punitive damages. The Court denied Mr. Muff's Motion to Amend. (J.APP. 0150, R.Doc. 22). Mr. Muff refiled his Motion to Amend Complaint on October 7, 2021. (J.APP. 0151, R.Doc. 23). The Magistrate Judge denied Mr. Muff's Motion on November 8, 2021. (J.APP. 0198, R.Doc. 30). Said motion was appealed to the District Court Judge on November 17, 2021. (J.APP. 0203, R.Doc. 31). The District Court Judge denied the Motion in part on December 28, 2021. (J.APP. 0289, R.Doc. 38). Mr. Muff asked for reconsideration of the Court's Order. (J.APP. 0304, R.Doc. 39). The Court denied the request on February 10, 2022. (J.APP. 0613, R.Doc. 60).

Appellate Case: 22-2107    Page: 13    Date Filed: 07/08/2022 Entry ID: 5175654

Wells Fargo filed a Motion for Summary Judgment alleging Mr. Muff's conversion claims fail as a matter of law on February 3, 2022. (J.APP. 0329, R.Doc. 51).

The Court erred because the court made factual finding which were erroneous. The Court also erred when it relied upon the UCC for relevant law on the statute of limitations for claims of conversion.

The law and the facts of this case do not support a finding for summary judgment for Wells Fargo and present questions of fact for a jury.

This is a classic case of elder abuse/exploitation executed by a stepson against his stepfather. Josh moved into Mr. Muff's home when his mother, Joyce Paige, married Mr. Muff. (J.APP. 0660, R.Doc. 63-4). Over the years, Josh rarely held a job and never contributed to the household financially. (J.APP. 0534, R.Doc. 63-4). Josh's mother Joyce died on January 2, 2015. (J.APP. 1170, R.Doc. 63-10).

Evidence overwhelmingly demonstrates that by January of 2016 Josh was actively using Wells Fargo Bank to launder money from four sources: Mr. Muff's Hartford Investments; Mr. Muff's wages from the "Muff Corporation"; Mr. Muff's expense reimbursement from the "Farm

13

Account"; and Joyce's account held at Wells Fargo by making unauthorized transfers from Joseph's Account; using an ATM card without authorization; and using a Wells Fargo Credit Card without authorization. (J.APP. 0024-0130, R.Doc. 2-8; J.APP. 0721-0727, R.Doc. 63-4; S.APP. 018-035, R.Doc. 53; J.APP. 0735-1075, R.Doc. 63-4). Despite Wells Fargo's requirement to have in place policies and procedures to monitor and detect elder exploitation, they failed to execute on their policies until Mr. Muff's brother Tom suspected fraud and reported it to Wells Fargo Bank on January 8, 2018.[2] (J.APP. 0691, R.Doc. 63-4).

Evidence demonstrates that Josh had taken over the care of his mother Joyce and Mr. Muff in the years before his mother's death. (J.APP. 0661, R.Doc. 63-4). After Joyce's death in January of 2015, Mr. Muff's behavior changed and he was described by his brothers as being depressed, isolated and nearly bedridden (failed to show up for work, not taking pills, in bed in mid-morning and the like). (J.APP. 0661, R.Doc. 63-4). Josh was the primary care giver for Mr. Muff and would

---

[2] Tom had noticed some questionable checks written to Mr. Muff from the Muff Corporation account and deposited into Mr. Muff's account at Wells Fargo. The Muff Corporation was a family farm business owned by three Muff brothers – Joseph, Thomas and Larry Muff.

Appellate Case: 22-2107    Page: 15    Date Filed: 07/08/2022 Entry ID: 5175654

take him to medical appointments, etc… since they lived together. (J.APP. 0661, R.Doc. 63-4).

By January of 2016 Josh was fully into a scheme to continue his theft of Mr. Muff's money from his Wells Fargo Bank account after depositing checks made out to Mr. Muff from the three sources. (J.APP. 0735-1075, R.Doc. 63-4; S.APP. 018-035, R.Doc. 53). Josh would fraudulently write or endorse the checks, deposit the checks into an account at Wells Fargo which was a joint account of Mr. Muff and Joyce (account ending X7971), transfer monies to another Wells Fargo account which was a joint account of Joyce and Josh (account ending X5714/x6530), and finally take all the money out for himself. (J.APP. 0024-0130, R.Doc. 2-8; J.APP. 0721-0727, R.Doc. 63-4; S.APP. 018-035, R.Doc. 53; J.APP. 0735-1075, R.Doc. 63-4).

By April of 2018, Mr. Muff requested assistance with his finances via a conservatorship and acknowledged that he had been swindled by Josh and that he couldn't protect himself. (J.APP. 1190-1192, R.Doc. 63-10). In July of 2018 he requested a guardianship. (J.APP. 0729, R.Doc. 63-4). Mr. Muff died just two months later. (J.APP. 1077, R.Doc. 63-8).

The Crawford County Sheriff's office, Lt. Kluender, investigated this matter and filed a detailed report addressing over $412,580 in checks forged by Josh, drawn on other banks and deposited into Mr. Muff's account at Wells Fargo Bank. (S.APP. 018-035, R.Doc. 53). The report notes an admission by Josh that Mr. Muff knew nothing about his scheme and did not authorize any of the transactions. (S.APP. 033, R.Doc. 53).

Mr. Muff's estate filed suit on December 17, 2020 in state court. (J.APP. 0001, R.Doc. 2). In its petition, the estate alleged three counts of conversion: Count 1 – The Hartford Funds; Count 2 – Mr. Muff's wages from the Muff Corporation and expenses paid to the farm account; and Count 3- Mr. Muff's marital interest in his wife Joyce's estate. (J.APP. 0001, R.Doc. 2). The case was removed from state court to the U.S. District Court for the Northern District of Iowa (Western Division), Sioux City, Iowa.

Expert Eric Sikowitz examined years of Mr. Muff's Wells Fargo statements and traced the funds from their sources through the three accounts at Wells Fargo Bank. Mr. Sikowitz's report (over 300 pages) included a bar graph showing the extreme changes in the volume and

size of transactions in the accounts compared to prior years, 2014 and 2015. (J.APP. 0749, R.Doc. 63-4).

Mr. Muff attempted to amend his Complaint by adding elder exploitation, action under the UCC, industry standards (bank regulatory requirements) and a request for punitive damages within the time period allowed under the trial scheduling order. (J.APP. 0151, R.Doc. 23). All requests were denied.

This brief will follow the discussion of the issues as presented in the Order granting Wells Fargo's Motion for Summary Judgment which began with Counts 2 and 3 of the Complaint.

## SUMMARY OF THE ARGUMENTS

The Court erred in granting Wells Fargo's Motion for Summary Judgment on Counts 1, 2 and 3 of Mr. Muff's Complaint. The Court also erred in denying Mr. Muff's Motion to Amend Complaint Counts 4, 5 and 6.

## INTRODUCTION

In its Order at page 5 "III FACTUAL BACKGROUND", there are found three factual errors.

First, the Court defines Joseph A. Muff as "Mr. Muff" and later states: "On January 8, 2018, Mr. Muff reported suspected fraud to Wells Fargo." (J.APP. 1278, R.Doc. 73). This is incorrect. The evidence shows in the report of Wells Fargo employee Fabiola Navarrette that Tom Muff made the notification because he was a member of Muff Corporation and saw some questionable checks. (J.APP. 0674, R.Doc. 63-4). Second, Court states: "That year, police investigated Josh for theft from Mr. Muff." (J.APP. 1278, R.Doc. 73). This is incorrect. There is no evidence that the police department performed any investigation. The investigation of Josh's criminal acts and theft against Mr. Muff was conducted by Lt. Kluender of the Crawford County Sheriff's Office. (S.APP. 018-035, R.Doc. 53). Third, the Court at page 5 states: "Plaintiff's complaint concerns only the Hartford checks that Josh fraudulently endorsed as Mr. Muff and deposited into Mr. Muff's account." (J.APP. 1278, R.Doc. 73). This is incorrect. Plaintiff's complaint includes all forged checks, including those made payable to

18

Mr. Muff from the Muff Corporation drawn on Defiance Bank as well as unauthorized transfers of the funds from Mr. Muff's Wells Fargo account to and account titled Joyce/Josh at Wells Fargo account (S.APP. 018-035, R.Doc. 53; J.APP. 0751-0763, R.Doc. 63-4; J.APP. 0872-0915, R.Doc. 63-5; J.APP. 0001, R.Doc. 2) totaling $770,000 per criminal sentence order. (J.APP. 1172 – 1188, R.Doc. 63-10).

The Court erred by making factual findings that were inconsistent with an overwhelming amount of evidence presented.

**Argument I** of Mr. Muff's brief corresponds to the Order's first analysis dealing with the Complaint's Counts 2 and 3. The Estate's Count 2 is for conversion of funds originating from the "Muff Corporation" and Count 3 is for conversion of the decedent's wife's (Joyce's) joint tenancy funds held in account with son Josh (thief).

Count 2 of the Complaint was dismissed upon the Court's misunderstanding that the Muff Corporation owned the funds. Instead, the Muff Corporation checks once made payable to Mr. Muff was his asset not the Muff Corporation's.

Count 3 of the Complaint was dismissed as a matter of law counter to Iowa law requiring a factual review of the status of a person's

name on a joint tenancy bank account. Although Josh's name was on an account with Joyce Muff, Josh never contributed any of the funds to the account. His entitlement to the funds upon her death is a fact question for the jury based on Iowa law.

**Argument II** corresponds to the final analysis in the Court's Order addressing Mr. Muff's Count 1 of the Complaint.

The actions for conversion are based on Wells Fargo's failure to meet industry standards set by regulators and the bank's own policies and procedures. The specific failures by Wells Fargo were set forth in experts' reports provided by Mr. Muff. (J.APP. 0491-0502, R.Doc. 51-2; J.APP. 1079-1111, R.Doc. 63-8). *See Nationwide Agribusiness v. Structural Restoration*, 705 F.Supp.2d 1070, 1077 (S.D. Iowa 2010). "An actionable claim of negligence includes the existence of a duty to conform [1078] to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages. *Stotts v. Eveleth*, 688 N.W.2d 803, 807 (Iowa 2004)." See also *Shams v. Hassan*, 905 N.W.2d 158 (Iowa 2017) at 163 finding that whether the statute of limitations had expired or was tolled is a question for the jury.

20

After Joseph Muff's brother Tom advised Wells Fargo of possible elder exploitation and theft by Mr. Muff's stepson Josh, Wells Fargo investigated the situation in January of 2018 and determined "elder abuse" (a/k/a "elder exploitation") had occurred and was committed by Josh. (J.APP. 0687, R.Doc. 63-4; J.APP. 008-010, R.Doc. 53). Josh carried out his scheme without detection by Wells Fargo from 2013 – early 2018 beginning with opening a credit card through Wells Fargo in 2013 in the name of Mr. Muff without Mr. Muff's knowledge or authorization. (J.APP. 0696, R.Doc. 63-4; J.APP. S.APP. 018, R.Doc. 53; J.APP. 1172 – 1188, R.Doc. 63-10; J.APP. 0662, R.Doc. 63-4). Joseph Muff did not know about the credit card until he and his brothers applied for a farm loan. (J.APP. 0662, R.Doc. 63-4).

**Argument III** refers to the Court's error in denying Mr. Muff's Motion to Amend the Complaint. Mr. Muff filed the Motion to Amend to address on-going discovery within the trial scheduling time frame. (J.APP. 0151, R.Doc. 23). The Magistrate Judge, without analysis, accepted facts alleged by Wells Fargo and denied the amendment. (J.APP. 0198, R.Doc. 30). The Court affirmed the ruling and accepting alleged facts proposed by Wells Fargo finding the proposed amendment

to be futile. (J.APP. 0289, R.Doc. 38). The Order is contrary to Federal Rule of Civil Procedure 15(a) and unsupported by the evidence.

## ARGUMENTS

## I. THE COURT ERRED IN GRANTING WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT ON COUNTS 2 AND 3 OF THE COMPLAINT

### Standard of Review

The Eighth Circuit Court reviews a grant of summary judgment de novo, *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 858 (8th Cir. 2009), affirming only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a).

### (A) The Muff Corporation and Farming Account Claim (Count 2)

Mr. Muff's Complaint Count 2 requests damages for funds derived from checks to Mr. Muff from the Muff Corporation and "Farm Account". (For simplicity, this brief will treat funds from the Muff Corporation and the "Farm Account" as one titled "Muff Corporation" as did the Court). (J.APP. 0001, R.Doc. 2). All such checks were drawn from accounts with Defiance Bank, written to Mr. Muff, and deposited to a Wells Fargo joint account in the name of Joseph Muff and Joyce

Paige Muff (account ending x7971) (S.APP. 018-035, R.Doc. 53; J.APP. 0872, R.Doc. 63-5).

The Order adopted two arguments from Wells Fargo: 1) Wells Fargo asserts that Mr. Muff cannot make claims on behalf of the corporation because the corporation is not a party to this case and never had a bank account with Wells Fargo; and, 2) Mr. Muff is unable to show his alleged injury relating to this bank account is fairly traceable to Wells Fargo's conduct. As a result, the Court dismissed Count 2 of The Estate's Complaint. (J.APP. 1280, R.Doc. 73).

The Estate is not making any claims on behalf of the corporation in this case. It is making a claim for the funds deposited *into* Wells Fargo *from* the Muff Corporation payable to Mr. Muff on a forged endorsement which were then stolen by Josh (unauthorized transfer to Joyce/Josh account—x5714/x6530).

The facts of this case show that Josh forged checks from the Muff Corporation accounts at Defiance Bank and Hartford Funds that were made out to Mr. Muff and deposited them into Mr. Muff's joint account he held with his wife Joyce at Wells Fargo Bank. Joyce died in February 2015. Josh knew Wells Fargo had no systems to detect his fraudulent

23

scheme so he used Wells Fargo to launder money through Wells Fargo.

The funds belonged to Mr. Muff when made payable to him and Wells

Fargo had dominion or control over the money in the Wells Fargo

accounts because it negotiated the checks. The funds were then

transferred from Mr. Muff's joint account at Wells Fargo into another

Wells Fargo joint account named Joyce Paige Muff and Joshua Paige

(account ending x5714/x6530) by Josh who then withdrew the money.

(S.APP. 037-453, R.Doc. 53). *See Phariss v. Eddy,* 478 N.W.2d 848, 851

(Iowa Ct. App. 1991). The *Phariss* court found that "For purposes of a

conversion action, a forged endorsement and an unauthorized

endorsement are synonymous." "…because there is a forged

endorsement the bank is liable for the full amount of the check unless it

meets the exception in Iowa Code Section 554.3419(3)." (today

554.3420.) *Phariss, Id.*

To show that Mr. Muff's injury is fairly traceable to Wells Fargo's

conduct, Mr. Muff provided Lt. Kluender's Report which set forth a list

of fraudulent checks which included checks from the Muff Corporation

accounts, as well as a very detailed and comprehensive report authored

by Mr. Muff's expert, Eric Sikowitz which traced all dollars in/out of Mr.

Muff's account at Wells Fargo using Wells Fargo's monthly statements. Mr. Sikowitz's report was never challenged by Wells Fargo.

Further, Josh admitted to the thefts and fraud to which he was charged and was ordered to pay restitution for the stolen Hartford funds ($281,825), Muff Corporation Checks ($412,580) and others. (J.APP. 1178, R.Doc. 63-10). The sentencing order includes all funds noted in Lt. Kluender's report plus other stolen funds. Mr. Muff showed with great particularity the steps of each dollar deposited to Mr. Muff's account at Wells Fargo to its ultimate destination in the possession of Josh. (J.APP. 0735 – 1075, R.Doc. 63-4 – 63-8). There is no issue that Wells Fargo's lack of proper procedures was a cause of damage to Mr. Muff and the amount of the damage. (J.APP. 1079-1111, R.Doc. 63-8; J.APP. 0491-0502, R.Doc. 51-2).

### (B) The Joyce Paige Muff/Tadd Joshua Paige Account Claim (Count 3)

Count 3 of Mr. Muff's complaint made a claim for proceeds of Mr. Muff's wife Joyce's accounts pursuant to Iowa's intestate statute 633.212. Joyce died intestate as no will was ever found.

The Court's Order at page nine states: "Plaintiff's argument is meritless and his reliance of *First National v. Curran*, 206 N.W.2d 317

25

(Iowa 1973) and *Anderson*, 368 N.W.2d at 109 to make that argument is unavailing." (J.APP. 1282, R.Doc. 73).

Iowa Administrative Code (IAC) 701 IAC 86.5(8)(c) deals with the survivor of a joint tenancy issue effectively stating the ownership of a joint tenancy account is a fact question. The IAC bases its analysis on *First National Bank v. Curran*, 206 N.W.2d 317 (Iowa 1973).

In addition, University of Iowa Law School Professor Sheldon F. Kurtz published a work on Probate titled *Kurtz on Iowa Estates*. In section 11.15 he discusses "Jointly Held Bank Accounts". The conclusion is that the surviving owner is a fact question. *See Williams v. Williams*, 100 N.W.2d 185 (1959); *Gunsaulis v. Tingler*, 218 N.W.2d 575 (Iowa 1974) discussing sham or fraudulent transfers. Professor Kurtz and his treatise was quoted by the Iowa Supreme Court in *In Re Estate of Thomann*, 649 N.W.2d 1, 7 (2002).

This case presents the possibility that Josh began his thefts *prior to his mother's death* in 2015. Expert Sikowitz examined statements dating from 2014 and discovered numerous transfers in similar amounts starting at least in 2014. (J.APP. 0750-0763, R.Doc. 63-4). In addition, Mr. Muff's brother Larry Muff testified that the fraud started

Appellate Case: 22-2107     Page: 27     Date Filed: 07/08/2022 Entry ID: 5175654

in the 2014 – 2016 time period. (J.APP. 0701-0702, R.Doc. 63-4). The question of ownership of Joyce's bank accounts under 633.212 and the Iowa case law on joint tenancy is a fact question and thus question for the jury.

The Court's Order at pages nine and ten notes: "Even if it did, no evidence supports that Josh breached a fiduciary duty to his mother. There is no evidence that a fiduciary duty existed between Josh and Mrs. Paige or that he breached that duty before or after Ms. Paige's death." (J.APP. 1282-1283, R.Doc. 73). Iowa has a long history of defining fiduciary relationships from various factual settings. The Uniform Jury Instruction defines a fiduciary relationship as a relation of trust and confidence on a subject between two persons. One of the persons is under a duty to act for or give advice to the other on that subject. Confidence is placed on one side and domination and influence result on the other. Evidence of the existence of a fiduciary relationship between Josh, Mr. Muff and Mrs. Paige is found in Thomas Muff's affidavit paragraphs 8, 10, 13 and 15. (J.APP. 0661, R.Doc. 63-4).

The cases demonstrate that factual issues are key on this issue and a jury question exists on both the fiduciary duty and breach

Appellate Case: 22-2107    Page: 28    Date Filed: 07/08/2022 Entry ID: 5175654

thereof. The Iowa Supreme Court's review of factual issues when discussing a joint tenancy bank account, demonstrates that factual issues that abound and are the province of a jury. Therefore, the Court erred in granting Wells Fargo's Motion for Summary Judgment on Mr. Muff's Count 3 of the complaint.

Wells Fargo, with effective anti-money laundering ("AML") or elder abuse policies and procedures, could have stopped the actions of Josh. See reports of Mr. Muff's experts Jonathan Heller and William Abernathy. (J.APP. 0491-0502, R.Doc. 51-2; J.APP. 1079-1111, R.Doc. 63-8). Each expert reviewed the factual detail of the Sikowitz report and opined that effective AML/ elder exploitation polices would have prevented Josh's scheme which was conducted over a period of two years. Wells Fargo Bank's policies and procedures specifically state that account changes in deposits/withdrawals are "red flags" for AML/elder exploitation. (S.APP. 518). *See* (J.APP. 0749, R.Doc. 63-4. An analysis of the account activity shows a dramatic spike in withdrawals from Joseph's account. Indeed, when Mr. Muff's brother Tom (a member of the Muff corporation) alerted Wells Fargo Bank to the possibility of fraud, the bank's systems engaged and they discovered elder abuse and

the exact cause. They also discovered that Josh was the perpetrator and failed to disclose such information to the account holder/victim, Mr. Muff. Wells Fargo's system failures continue to this day. A recent Wall Street Journal article reported that Wells Fargo has agreed to pay $7 million in a settlement with the Securities and Exchange Commission after alleged glitches in a new anti-money-laundering system let suspicious transactions escape initial notice.

There are two Iowa Supreme Court cases that are indistinguishable and directly on point in support of Mr. Muff's causes of action in this case: *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 850 (1989) and *Phariss v. Eddy*, 478 N.W.2d 848, 851 (Iowa Ct. App. 1991).

In *Waukon*, the Iowa Supreme Court held the bank did not act in accordance with reasonable commercial standards (in agreement with Mr. Muff's experts) and payee's allegedly negligent business practices did not provide the bank with an affirmative defense (likewise here, given Mr. Muff's physical condition there exists a jury question as to whether he was more or less responsible than Wells Fargo Bank). UCC Section 554.3420(1) makes a bank responsible for payment of a forged

instrument. *See* also *Phariss*, wherein the court came to the same conclusion.

*Waukon* also examines the actions of the bank concerning an inquiry about a signor and found the bank's actions to be unreasonable (*Waukon*, at 850). Here, Wells Fargo Bank should have detected the increase in deposits/withdrawals from the Joseph/Joyce Joint Account (x7971) to the Joyce/Josh Joint account (x5714) increased 4 times from 2015 to 2106. (J.APP. 0749, R.Doc. 63-4). Wells Fargo Bank's policies and procedures specifically defined the volume and frequency changes as "red flags" but failed to investigate the possible money laundering and elder exploitation. See J.APP. 518). The online transfers are also red flags which were ignored by Wells Fargo. Wells Fargo's policies and procedures specifically cite an example which is exactly what happened in this case: "Sole-to-Joint, Joint-to-Sole Transfers. In the event funds are transferred through a series of accounts, which results in the funds being transferred to an account on which the owner of the originating account is not a signer, follow the steps for Sole-to-Joint, Joint-to-Sole transfers." Wells Fargo failed to perform any investigation of the

suspicious on-line transfer activity between accounts. (S.APP. 519-520, R.Doc. 64).

As in *Waukon*, the *Phariss* Court noted similar issues and results when a bank paid on a forged instrument. The Court noted the question of "commercially reasonable" is a question of fact for jurors.

The Order seems to assert that the Muff Corporation should have sought damages for the thefts from Mr. Muff's account at Wells Fargo. The Court noted: "Also, Muff Corporation is not a party to this suit and plaintiff cannot assert claims for any injury it suffered on its behalf." (J.APP. 1280, R.Doc. 73). The Estate did not make any claims for injuries to the Muff Corporation. The Muff Corporation was simply the "source" of some of the funds deposited to Mr. Muff's account at Wells Fargo. Once the corporate funds were made payable to Mr. Muff they became Mr. Muff's money. The claim is for dollars taken from Mr. Muff's Wells Fargo account without his authorization. The source of the funds taken is irrelevant. The corporation did not suffer a loss – Mr. Muff did.

Appellate Case: 22-2107    Page: 32    Date Filed: 07/08/2022 Entry ID: 5175654

Based on the extensive facts in this matter and Iowa law, Wells Fargo's Motion for Summary Judgment on Mr. Muff's Count 2 should have been denied.

## II. THE DISTRICT COURT ERRED IN GRANTING WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT ON COUNT 1 OF THE COMPLAINT

### Standard of Review

The Eighth Circuit Court reviews a grant of summary judgment de novo, *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 858 (8th Cir. 2009), affirming only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a).

### (C) The Joseph Muff/Joyce Paige Muff Account Claim (Count 1)

The Court's Order granted summary judgment for Mr. Muff's conversion claims under Count 1 of the Complaint based on the U.C.C. while denying Mr. Muff's Motion to Amend the Complaint to add U.C.C. and industry authority.

### "1. Failure as a Matter of Law"

The Court begins its analysis at page 11 of the Order. *In re Est. of Bearbower*, 426 N.W.2d 392, 394 n.1 (Iowa 1988) sets forth the

32

elements of a conversion claim as: "1) ownership by the plaintiff of other possessory right in the plaintiff greater than that of the defendant; 2) exercise of dominion or control over chattels by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and 3) damage to plaintiff." (J.APP. 1284, R.Doc. 73).

The Court found that "...defendant meets its initial burden by identifying those portions of the record which show a lack of a genuine issue for trial. (citation omitted) Mr. Muff never requested defendant investigate the unauthorized transactions or that defendant reimburse Mr. Muff for them." (J.APP. 1284, R.Doc. 73). There is no requirement under a claim of conversion for a plaintiff to request an investigation or to request reimbursement.

Iowa Code section 554.3419(1)(c) (1991) (today, 554.3420) provides: "An instrument is converted when ... it is paid on a forged endorsement." The record in this case is clear that Mr. Muff's stepson Josh forged checks from the corporate accounts and Hartford funds, deposited them to Mr. Muff's account at Wells Fargo, where they were negotiated by Wells Fargo on the forged endorsements. See Muff's

Statement of Additional Material Facts at paragraphs 6, 7, 10, and 40.
(J.APP. 0648-0656, R.Doc. 63).

Continuing, the Court found: "Defendant shows evidence that plaintiff cannot support a conversion claim because he cannot show that Wells Fargo exercised dominion or control over Mr. Muff's account inconsistent with, or in derogation of, his rights, or that Mr. Muff's possessory right was greater than that of Wells Fargo." (J.APP. 1284, R.Doc. 73). In support of this finding, the Court points to Docs 51-1, at 6 - Wells Fargo Statement of Material Fact (J.APP. 0335, R.Doc. 51) and 63-2, at 3 - The Estate's Response to Wells Fargo Statement of Material Facts (J.APP. 0642, R.Doc. 63-2). Wells Fargo's Statement of Material Facts (Doc 51-1) at 6 states:

> Plaintiff alleges in this case that Tadd Joshua Paige fraudulently transferred funds from the Joseph/Joyce Joint Account to the Tadd/Joyce Joint Account using Joyce Paige Muff's online credentials.

The Court's reference to this statement is confusing, as it does not appear to address a failure of Mr. Muff to show that Wells Fargo exercised dominion or control over the account or possessory rights. Further, Mr. Muff's Response to Wells Fargo Statement of Material Facts (J.APP. 0642, Doc 63-2 at 3) simply admitted the statement made

34

by Wells Fargo. See *Home Indemnity Co. of N.Y. v. State Bank of Fort Dodge,* 8 N.W. 2d 757,769 (1943) rejecting this Court's argument.

There is no doubt that Wells Fargo exercised dominion or control over the accounts. Once the forged checks were accepted by Wells Fargo they became liable for conversion. See Iowa Code § 554.3420; *Waukon* and *Phariss*.

### "a. Plaintiff's Possessory Right"

The Court found that Mr. Muff failed to show a genuine dispute of material fact as to plaintiff's possessory right. "Plaintiff fails to address and thus concedes defendant's argument that there is no conversion claim **when the intended recipient has funds deposited into his account**." (emphasis added) (J.APP. 1284, R.Doc 73). The checks were **forged**. The deposits were **fraudulent**. Mr. Muff was unaware of the forged checks and the deposits to his account. (J.APP. 1190-1192, R.Doc. 63-10 Conservatorship Exhibit). Further, although the funds were initially deposited to the Joseph/Joyce Joint Account at Wells Fargo, that account was a mere laundering vehicle for the thief (Josh) to immediately transfer the funds to another Wells Fargo account which he controlled and then immediately withdrew the funds.

35

Incredibly, the Court finds at page 12 of its order: "He also fails to identify how the money is traceable or what money defendant owes him." (J.APP. 1285, R.Doc. 73). The Estate provided the court with Lt. Kluender's investigative report which specifically shows each Corporate check made to Mr. Muff that was paid by Wells Fargo on a forged instrument. The same report shows that Josh **admitted** to improperly taking said funds. In addition, the Court was provided Mr. Muff's expert Eric Sikowitz's report which details and traces all of the funds into/out of Mr. Muff's accounts. Wells Fargo never disputed Mr. Sikowitz's report. Mr. Sikowitz's report must be admitted as true and outlines every dollar taken by Josh including the source(s) thereof. Each check was payable to Mr. Muff.

### "b. Plaintiff's Right to Reimbursement"

The Court found that Mr. Muff failed to identify a right to reimbursement from Wells Fargo for the alleged theft by Josh. (J.APP. 1285, R.Doc. 73). However, a "right to reimbursement" is not an element of a conversion claim and thus irrelevant. As previously established, there is no doubt that Josh stole funds belonging to Mr. Muff. The damage to Mr. Muff, the third element of conversion, is

36

beyond doubt. *Bearbower*, 426 N.W.2d at 394 n.1 sets forth the three elements of conversion:

"[1] The essential elements of conversion are: 1) ownership by the plaintiff or other possessory right in the plaintiff greater than that of the defendant; 2) exercise of dominion or control over chattels by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and 3) damage to plaintiff." (citations omitted).

The court in *Bearbower*, like the court in plaintiff's cited case *Community Voice Line, LLC v. Great Lakes Comm. Corp.*, 18 F. Supp.3d 966, 980 (N.D. Iowa 2014)) does not address a "right to reimbursement". In addition to setting forth the elements of conversion, the *Community Voice Line* court stated: "Conversion may be committed, *inter alia*, "by obtaining the chattel through fraud or by using a chattel, properly within one's control, in an unauthorized manner." *Id.* (citing RESTATEMENT (SECOND) OF TORTS §§ 221(b), 228)."

The question presented to the Court should have been limited to whether the undisputed facts support a claim for conversion not a "right to reimbursement".

37

**"2. Account Agreement"**

The Court found that Wells Fargo was entitled to summary judgment on Count 1 because "… the account agreement bars plaintiff's claim." (J.APP. 1291, R.Doc. 73). This position would create a defense for money launderers through a bank's account agreement.

The Court's Order at page thirteen states: "Plaintiff asserts the action did not accrue because defendant allegedly knew about Josh's fraud and failed to disclose it. (*Id.*). Plaintiff's argument is baseless." (J.APP. 1286, R.Doc 73). Let's examine the facts. Experts Heller and Abernathy both conclude that Wells Fargo should have detected Josh's deposits/withdrawals because of their size and frequency which was a substantial change in account characteristics. We know that Wells Fargo ultimately investigated the activity and concluded that elder abuse was committed. We know that Wells Fargo never disclosed the facts of that report to Mr. Muff. The conclusion is that Wells Fargo *hid* the report from Mr. Muff because there is no evidence that it was ever disclosed prior to discovery in this case. The Fabiola report was expertly analyzed, but stopped at the office of the person who wrote it either because of inadequate policies and procedures, or inadequate

execution/supervision. (J.APP. 0691, R.Doc. 63-4). See also Mr. Muff's experts' reports at J.APP. 0491-0502, R.Doc. 51-2; and J.APP. 1079-1111, R.Doc. 63-8).

There is no fact that disputes Mr. Muff's claims. It is clearly a fact question and should result in a jury question and verdict for Mr. Muff.

The Court's Order at page 14 states: "Mr. Muff failed to timely review and notify the bank of fraudulent transactions in accordance with his agreement with defendant." (J.APP. 1287, R.Doc. 73). Not examined by the Court are two competing concepts: Wells Fargo's obligations under anti-money laundering (elder exploitation) regulations; and its own requirements pursuant to Wells Fargo policies and procedures. In addition, the account agreement includes two clauses not examined by the Order:

1.     At page 10 the account agreement (J.APP. 0370, R.Doc. 51-2) it states:

> The Bank will meet its standard of care for your account, provided the Bank exercises ordinary care in the transaction at issue. When the Bank takes an item for processing by automated means, "ordinary care" does not require that the Bank examine the item. In all other cases, "ordinary care" requires only that the Bank follow standards that do not vary unreasonably from the general standards followed by similarly situated banks. The Bank's policies

and procedures are general internal guidelines and do not establish a higher standard of care for the Bank than is otherwise established by the laws governing your account.

2.      At page 11 of the account agreement (J.APP. 0371, R.Doc.

51-2), it states: "Neither you nor the Bank shall be deemed to be in

default of any of the obligations required to be performed under this

Agreement if the performance thereof is delayed, hindered, or becomes

impossible because of … any cause beyond the control of you or the

Bank."

These two clauses create fact questions which should be presented

to a jury.

As early as 1964 the Iowa Supreme Court addressed terms in

contracts and stated: "Although we have held there may be a contract

implied in law on a point not covered by an express contract, there can

be no such implied contract on a point fully covered by an express

contract and in direct conflict therewith." *Smith v. Stowell*, 125 N.W.2d

795, 800 (1964). The principle continues today. See *Ryan Companies US*

*Inc., v. FDP WTC, LLC*, 2022 WL 469336. The account agreement does

not address the modern duties required by regulators concerning elder

exploitation as noted by Mr. Muff's experts and Wells Fargo's own

policies and procedures requiring elder exploitation monitoring and detection. The Order disregarded the contractual obligations Wells Fargo agreed to concerning elder exploitation via its own policies and procedures and regulators requirements (including the U.S. Treasury and others).

The record demonstrates that Wells Fargo should have known about the aberrant account behavior in 2015 due to changes in account characteristics. The account characteristics changed in volume and frequency of deposits/withdrawals by four times the volume of activity from 2015. (J.APP. 0749, R.Doc. 63-4). Wells Fargo's own policies and procedures note that a change in deposits/withdrawals is a "red flag". (S.APP. 518, R.Doc. 64). The volume/frequency continued in 2016, 2017 and by 2018 Josh had depleted all of Mr. Muff's liquid assets. (S.APP. 037-453, R.Doc. 53). Elder exploitation is a plague on seniors today and regulators have set standards for banks to observe account anomalies to detect such activity. Had Wells Fargo done so, Mr. Muff would have been able to take affirmative action to resolve the issue before it became a $770,000 + loss.

The Court's Order at page 14 states: "Plaintiff first notified the bank of suspected fraud on January 8, 2018." (J.APP. 1287, R.Doc. 73). This statement is in error. The Plaintiff did not notify the bank of any suspected fraud because he was **UNAWARE** of any fraud. Mr. Muff's brother Tom is the one who began to have suspicions due to account activity in the Muff Corp. account then contacted Wells Fargo.

The record demonstrates the classic elder exploitation/abuse of a relative taking advantage of a senior. The affidavit of Mr. Muff's brother Tom establishes Mr. Muff's dependency on the perpetrator (stepson Josh). Tom's affidavit at paragraph 8 notes that Josh "… had taken over most of the household affairs. Both Mr. Muff and Joyce relied upon Josh to handle personal matters for them. (J.APP. 0661, R.Doc. 63-4). At paragraph 10 of Tom's affidavit he states: "Joe loved Josh, trusted him, and began to rely on him more and more to assist him with household and personal affairs." (J.APP. 0661, R.Doc. 63-4). At paragraph 13 of Tom's affidavit he states: "Joe became reclusive. He never left the house, except to attend a doctor's appointment. Josh was doing all the shopping, buying groceries to bring home, and all other household essentials." (J.APP. 0661, R.Doc. 63-4). Further, at

paragraph 15: "Josh began to isolate Joe from the family. He insisted on taking him to his doctor appointments. He sent text messages to our sisters telling them to keep us away from Joe because our visits were "upsetting" to him." (J.APP. 0661, R.Doc. 63-4). Once Mr. Muff's exploitation was discovered and acknowledged by him, he immediately executed conservatorship documents and then guardianship documents. (J.APP. 0729– 0733, R.Doc. 63-4). Mr. Muff was an intelligent individual but Josh had completely overtaken his ability to care for himself and his wife's death had a major effect on Mr. Muff's behavior. (J.APP. 0661, R.Doc. 63-4). A fact question seems paramount here. Could Wells Fargo have detected the exploitation in 2015 or 2016 which would have enabled Mr. Muff to resolve the matter? The Court's Order disregards Wells Fargo's regulatory obligations and its own policies and procedures for detection and prevention. Had Wells Fargo taken proper action in 2015 none of the account losses would have occurred. The motion for summary judgment should have been denied and the fact questions presented to a jury.

The Court, at page 15, continues to discuss the UCC which seems both irrelevant and not a part of this action due to the denial of the

amendment to add the UCC requirements. (J.APP. 1288, R.Doc. 73; J.APP. 0289; R.Doc. 38). In *Husker News Co. v. South Ottumwa Sav. Bank*, 482 N.W.2d 404, 409 (1992) the court rejected the concept that the UCC had supplanted Iowa tort law by stating "...we need not resolve the issue however because on this de novo review we find negligence on the part of Husker greatly exceeds the combined negligence on the part of the defendants." *It is also likely an issue for the legislative body of government, not the courts*. The Order overrules *Husker* and holds the two theories (UCC and conversion) are interconnected without citing any authority for such a proposition.

At page 17 of the Court's Order, the Court states:

> Plaintiff also implies – without citing to anything in the record – that defendant breached the account agreement by "not acting in accordance with commercially reasonable standards." (Do. 63-1, at 13 (citing Waukon Auto Supply v. Farmers & Merchants Sav. Bank, 440 N.W.2d 844, 850 (1989); Phariss v. Eddy, 478 N.W.2d 848, 851 (Iowa Ct. App. 1991)). Even though plaintiff did not further elaborate on this argument beyond citing to the cases, the Court finds neither case is relevant here. Those cases are distinguishable because, unlike here, both of those cases involved managers of businesses cashing checks.

(J.APP. 1290, R.Doc. 73).

The key to the conversion claim is found in Iowa law in the cases cited by The Estate. *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 850 (1989) and *Phariss v. Eddy*, 478 N.W.2d 848, 851 (Iowa Ct. App. 1991). *See also*, *Home Indemnity Co. of N.Y. v. State Bank of Fort Dodge*, 8 N.W. 2d 757 (1943).

The Estate's experts Abernathy and Heller explained the commercially reasonable standards and how Wells Fargo failed to act accordingly. (J.APP. 1079-1111, R.Doc. 63-8; J.APP. 0491-0502, R.Doc. 51-2).

The Court disregarded the Iowa law by writing: "Those cases are distinguishable because, unlike here, both of those cases involved managers of businesses cashing checks." (J.APP. 1290, R.Doc. 73). The problem with the "distinction" is there is no significant difference in the cited cases and this case in that they both deal with third-parties forging checks. Further, the Order states: "Thus, as noted above, the plaintiff fails to address defendant's argument that there is no conversion claim when the intended recipient has funds deposited into his account." (J.APP. 1290, R.Doc. 73). This argument suggests that Josh, the convicted thief of those funds, did nothing wrong because he

deposited the funds into Mr. Muff's account. If so, the State of Iowa has wrongfully convicted Josh. Both Wells Fargo and the Court have disregarded the events which occurred *after* the funds were deposited – the theft of the funds.

Wells Fargo's argument is unsupported by the evidence or the law. The checks (from Hartford and the Corporation) were all forged and Wells Fargo Bank cashed the checks on a forged instrument which fulfilled element two of the conversion cause of action. See *In re Est. of Bearbower*, 426 N.W.2d 392, 394 n. 1 (Iowa 1988). *See also Phariss*, wherein the Court found that the negotiation of a check on a forged instrument was conversion. *See also* UCC § 554-3420 which is consistent with *Phariss*. Josh's scheme was to forge the checks, deposit them into Joseph/Joyce's Joint Account, transfer the funds into Joyce/Josh' Joint Account and then finally withdrawing the funds. Josh's scheme was classic money laundering.

Wells Fargo's failures raise questions of fact for the jury.

### "3. Statute of Limitations"

The Court's Order at page 18 states:

> "Plaintiff argues Mr. Muff could not defend himself against fraud because he lacked capacity to manage his

financial affairs. (Doc. 63-1, at 12). But plaintiff admits facts contrary to his argument. It is undisputed that Mr. Muff was able to not only take care of his own financial affairs but also attended to those of Muff Corp. between January 2016 and September 8, 2017, when the relevant fraud occurred."

(J.APP. 1291, R.Doc. 73)

The Court in its footnote 8 refers to plaintiff's testimony regarding the creation of a voluntary guardianship established in July, 2018 and voluntary conservatorship established in April, 2018 as evidence that Mr. Muff was fully capable of monitoring and managing his financial affairs. (J.APP. 1291, R.Doc. 73).

This extremely limited analysis fails to take into consideration the testimony of Mr. Muff's brother Tom who testified that Mr. Muff's mental and physical health began to decline after the death of his wife. Tom testified:

- "Both Joe and Joyce relied upon Josh to handle personal matters for them." (J.APP. 0661, R.Doc. 63-4).

- "Joe loved Josh, trusted him, and began to rely on him more and more to assist him with household and personal affairs." (J.APP. 0661, R.Doc. 63-4)

- "Joe became reclusive. He never left the house, except to attend a doctor's appointment. Josh was doing all the shopping, buying groceries to bring home, and all other household essentials." (J.APP. 0661, R.Doc. 63-4).

- "Joe had some health conditions, including high blood pressure. My brother Larry and I would go visit him at least once a week to fill his pill organizer and make sure that he was taking his medications." (J.APP. 0661, R.Doc. 63-4).

In addition, the fact that the guardianship and conservatorships were not in place until 2018 says nothing about when Mr. Muff's decline began. To assume that Mr. Muff was not in a state of decline until the date the document was executed is an extremely limited view of the facts. The Court treated those dates as if they were light switches and just then established the need for assistance. That conclusion is belied by Tom's testimony. Likewise, the Court found that Mr. Muff was attending to the affairs of Muff Corporation between January 2016 and September 8, 2017 and cited Doc 51-1 at 10; and 63-2, at 5. (J.APP. 1291, R.Doc. 73). Doc 51-1 is Wells Fargo's Statement of Material Facts. At paragraph 10, Wells Fargo states: "Wells Fargo was not informed of

the January 2, 2015 death of Joyce Paige Muff until January 8, 2018, when Thomas Muff and/or Joseph Muff notified Wells Fargo of suspected fraud by Tadd Joshua Paige." (J.APP. 0335, R.Doc. 51-1). Doc. 63-2 is Mr. Muff's Response to Wells Fargo's Statement of Material Facts. (J.APP. 0642, R.Doc. 63-2). However, paragraph 5 as cited by the Court merely admits to Wells Fargo's Statement of Material Facts ¶ 5 which states: "The Tadd/Joyce Joint Account was opened on January 26, 2011 and closed on January 24, 2018 due to suspected fraud." (J.APP. 0642, R.Doc. 63-2). The Court's reliance on these statements to support the allegation that Mr. Muff was taking care of his own and the Muff Corporation financial affairs is confusing as neither statement appears to be relevant. In addition, Tom Muff testified that following the death of his wife Joyce in 2015, Joe's behavior started to change and that he began sleeping a lot and failing to show up for work. (J.APP. 0661, R.Doc. 63-4). In other words, Mr. Muff was **NOT** tending to the affairs of the Muff Corporation. See also Exhibit A to Mr. Muff's conservatorship petition which states he cannot care for himself and has been taken advantage of in the past. (J.APP. 1192, R.Doc. 63-10).

The Court's Order continues to refer to law that simply doesn't apply. At page 18 of the Order, the court discusses Iowa Code 554.4111 (UCC) stating an action must be commenced "… *within three years after the cause of action accrues.*" (J.APP. 1291, R.Doc. 73). There are two defects in the analysis: 1) 554.4111 is not the applicable statute. This case is a fraud/conversion matter and the proper statute of limitation is found in 614.1(4) and 614.4. 2) The Order refers to the date the last Hartford check was deposited. (J.APP. 1291, R.Doc. 73). The operative date is a jury question and might be when Wells Fargo was forced (through discovery) to disclose its cover-up. The investigation and report of Wells Fargo employee Fabiola Navarrette was never disclosed to Mr. Muff.

The statute of limitation for conversion, a type of fraud, is found in Iowa Code § 614.4 and 614.1(4). Section 614.4 states: "In actions for relief on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake or trespass complained of shall have been discovered by the party aggrieved." Iowa Code § 614.1(4) sets a five year statute of limitations for fraud/conversion. In Iowa the discovery rule tolls the

50

statute of limitation until the plaintiff has discovered the fact of the injury and its **cause**. *See Hallett Const. Co. v. Meister*, 713 N.W.2d 225, 231 (Iowa 2006) quoting *K&W Elec. Inc. v. State*, 712 N.W.2d 111, 116 (Iowa 2006). In *Hallett*, the Court found: "The "discovery rule" tolls the statute of limitations until the *plaintiff has discovered the fact of the injury and its cause* or by the exercise of reasonable diligence should have discovered these facts." *Hallet, Id.*

There is no evidence that Mr. Muff knew of his injury or the cause prior to April 2018 when he requested a conservatorship. After Mr. Muff's brother Tom contacted Wells Fargo with his own suspicions, Wells Fargo initiated an investigation and in January 2018 found that Josh had committed elder abuse/exploitation against Mr. Muff. However, despite their findings, Wells Fargo never contacted Mr. Muff to warn or inform him of their findings. Mr. Muff's brother Tom testified that Mr. Muff did not believe that Josh was stealing from him until he heard the recordings from Hartford (obtained by the sheriff's office) wherein Josh, impersonating Mr. Muff, called Hartford and requested withdrawals. (J.APP. 0662-0663, R.Doc. 63-4). Mr. Muff was unaware of the recordings until May 3, 2018 when he met with Lt.

51

Kluender at the Sheriff's office and listened to the tapes. (S.App. 032; R.Doc 53). Mr. Muff never knew that Wells Fargo had failed to take required action until this case.

The issue of when Mr. Muff became aware of his injury and its cause is a question for the jury.

At page 18 of the Court's Order, the court discusses the physical and mental condition of Mr. Muff. (J.APP. 1291, R.Doc. 73). The analysis seems limited in that the court notes, at footnote 8, that the conservatorship and guardianship occurred on April 28, 2018 and July 26, 2028. (J.APP. 1291, R.Doc. 73). The Order concludes that "Plaintiff argues Mr. Muff could not defend himself against fraud because he lacked capacity to manage his financial affairs. (Doc 63-1, at 12). But plaintiff admits facts contrary to this argument." (J.APP. 1291, R.Doc. 73). The facts show that Mr. Muff couldn't defend himself against elder abuse because for a period of three years his step-son isolated him, manipulated him and stole over $770,000. There is no evidence that Mr. Muff discovered Wells Fargo's misconduct before his guardianship and conservatorship were put into place. By the time they were voluntarily put into place Mr. Muff was obviously aware that he could no longer

handle his affairs. (J.APP. 1192, R.Doc. 63-10). However, testimony from his brothers Tom and Larry both indicated that they knew Mr. Muff was struggling and that Josh had been 'taking care' of Mr. Muff since his wife's health began to decline. Further, after her death in 2015, Mr. Muff became even more dependent upon his stepson Josh. At a minimum the facts show a jury question on Mr. Muff's financial ability.

Mr. Muff's brother Tom who was a member of the Muff Corporation had noticed some questionable checks appeared to have been deposited through Wells Fargo and reported his concerns. It was Tom Muff who reported a concern. Not Mr. Muff. Mr. Muff and his conservators never understood Wells Fargo's misconduct until discovery commenced in this action and testimony from Wells Fargo employee Fabiola confirms that position; or, at a minimum, establishes a fact question for the jury.

The Electronic Funds Transfer Act (EFTA) excludes transactions originated by checks. The Hartford and Corporate checks drawn on Defiance Bank were all checks deposited into Mr. Muff's Wells Fargo account because Josh knew that Wells Fargo would take no action on

53

the account. Since the transactions originated with check deposits, there is no coverage by EFTA.

The Order makes reference to Wells Fargo producing statements as part of a criminal investigation. (J.APP. 1294, R.Doc. 73). The statements were produced to the Crawford County, Iowa attorney in March, 2018, not to Mr. Muff. (S.APP. 455-458, R.Doc. 53-1). In fact, no evidence exists as to when the statements were provided to Mr. Muff or his conservators. Further, and perhaps more importantly, there is no evidence that that Wells Fargo employee Fabiola Navarrete's investigation and findings were ever provided to Mr. Muff, his conservators or guardians, or any law enforcement authority. The Court had difficulty finding that the failure to disclose this information was a cover-up. That is a question for the jury. Rather, it's reasonable to believe that a jury could find that Wells Fargo did indeed cover-up their culpability (which, in turn, may permit punitive damages for fraud).

### III. THE COURT ERRED IN DENYING MR. MUFF'S MOTION TO AMEND ITS COMPLAINT

#### Standard of Review

The Eighth Circuit Court reviews the denial of a motion to amend for abuse of discretion. *Fuller v. Secretary of Defense*, 30 F.3d 86, 88

(8th Cir. 1994). Under Rule 15 of the Federal rules of Civil Procedure, leave to amend should be granted freely "when justice so requires." Fed.R.Civ.P. 15(a).

### Denial of Plaintiff's Motion to Amend Complaint

Mr. Muff filed his Motion to Amend Complaint, including proposed Amended Complaint, on October 6, 2021. (J.APP. 0142, R.Doc. 21). Mr. Muff's Motion was denied on October 7, 2021 for failing to comply with Local Rule 7(k) by indicating whether Wells Fargo consented to the Motion, and Local Rule 15 for failing to describe the changes sought. (J.APP. 0150, R.Doc. 22). The court afforded Mr. Muff with the opportunity to refile the motion within ten (10) days. Mr. Muff refiled his Motion to Amend Complaint on October 7, 2021. (J.APP. 0151, R.Doc. 23). Mr. Muff's filing included a proposed Amended Complaint. (J.APP. 0153, R.Doc. 23-1). Wells Fargo filed a Resistance to Mr. Muff's Motion to Amend Complaint on October 22, 2021. (J.APP. 0159, R.Doc. 26). Wells Fargo also filed a Motion to Amend Answer to add affirmative defenses on October 22, 2012. (J.APP. 0174, R.Doc. 27). On November 8, 2021, The U.S. Magistrate Judge denied Mr. Muff's Motion to Amend Complaint and Granted Wells Fargo's Motion to

Amend its Answer and Affirmative Defenses. (J.APP. 0198, R.Doc. 30).

Mr. Muff filed its Objection to Magistrate's Order on November 17, 2021. (J.APP. 0203, R.Doc. 31). Wells Fargo filed a Resistance to Mr. Muff's appeal of the Magistrate's Order on December 1, 2021. (J.APP. 0275, R.Doc. 33). On December 28, 2021, The Court issued its Order denying Mr. Muff's Motion to Amend. (J.APP. 0289, R.Doc. 38).

Federal Rule of Civil Procedure 15(a) notes that amendments "shall be freely given when justice so requires." In his Order denying said amendment, the Magistrate Judge acknowledges "…I am reluctant to address them at length and risk giving them undue weight when they have not truly been tested by an adversary." (J.APP. 0200; R.Doc. 30;). Thus, contrary to the simple rule of "freely given", the Magistrate Judge freely denied Mr. Muff's motion without allowing discovery despite the timely filing of Mr. Muff's Motion. In support of his denial, the Magistrate Judge cited *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003); *Becker v. Univ. of Neb.*, 191 F.3d 904, 908 (8th Cir. 1999); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994); *Dennis v. Dillard Dept. Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000); and *Baldwin v. Estherville*, 333 F.Supp.3d 817, 828

(N.D. Iowa 2018). (J.APP. 0199, R.Doc. 30). However, each of these cases are distinguishable from this matter.

In *Hammer*, the Court denied a second motion to amend which was filed fifteen months after the Complaint. On appeal the 8th Circuit found: "The district court had already granted leave to amend once, and the second motion for leave to amend was filed after discovery had closed and the City had moved for summary judgment on the pleaded theories. Therefore, the district court had adequate reasons to deny Hammer's motion." In this case, Mr. Muff's Motion for amendment was the first Motion to Amend requested; was offered in compliance with the scheduling order; and well before the discovery closed (late December).

In *Becker*, the district court denied the motion to amend the complaint "because the additional allegations either involved events that did not arise after the filing of the counterclaim or were repetitive of claims in the original complaint." *Id*. On appeal the Eighth Circuit Court affirmed the District Court finding: "Dr. Becker's motion to amend was filed almost two years after the complaint was filed and sought to add numerous allegations to the complaint. The magistrate judge found that, contrary to Dr. Becker's assertions, the

57

additional events that Dr. Becker sought to add to the complaint did not arise after the filing of his counterclaim." Further, the 8th Circuit Court stated: "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." In this case, **Mr. Muff**'s Petition was filed on December 17, 2020 in state court and removed to the federal court and filed on January 22, 2021. Onset of discovery in this case was delayed due to Wells Fargo's delay in filing an Answer and other preliminary filings. Initial Disclosures were due on May 21, 2021. However, Wells Fargo did not produce any documentation until November 1, 2021. **Mr. Muff** sought to amend his Complaint on October 6, 2021 based upon documentation received as a result of his own investigation. The Motion was filed just ten months after the filing of the Complaint and **prior to any** exchange of discovery.

The case of *Dennis v. Dillard Dept. Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000) involves the denial of a Defendant's Motion to Amend its Answer. The district court denied the motion accepting the Plaintiff's assertion that "… she would be prejudiced if the motion were granted because trial was scheduled to begin in less than three months;

discovery had closed; and the Defendant had fully briefed its summary judgment motion" and denied the Motion to Amend. The 8th Circuit found that the district court abused its discretion in denying the motion to amend pleadings asserting that the district court had discretion to reopen discovery for the limited purpose of exploring the additional defense and three months prior to trial was ample time to do so. In this case, discovery had not yet commenced and was needed to further explore Mr. Muff's claims. In addition, trial was scheduled for June 6, 2022 – a full eight months after filing the motion to amend.

Finally, the Magistrate Judge found that the motion should be denied because the asserted claims are "futile" citing *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). However, in making this finding the Magistrate stated: "I have reviewed Defendant's assertion regarding the futility of Plaintiff's claim. While these arguments appear to be well-reasoned and persuasive, I am reluctant to address them at length and risk giving them undue weight when they have not truly been tested by an adversary. Thus, I simply conclude that Plaintiff's motion should be denied because the asserted claims are futile." (J.APP. 0200, R.Doc. 30).

The *Zutz* Court found that the Plaintiff's amendment was futile because they were barred by res judicata. The Plaintiff in the *Zutz* case had previously filed the case in state court and had a full and fair opportunity to litigate the matter. None of these facts are present in this case.

In the December 28, 2021 Order denying Mr. Muff's appeal of the Magistrate's Order, the Court notes:

> "Neither plaintiff's objection, nor his Exhibit 1, however, are part of his complaint or his proposed amended complaint. The Court may not, therefore, consider any facts alleged in or established by those pleadings in determining whether plaintiff's proposed amended complaint is futile. Rather, the Court is limited to the complaint itself and any documents attached or incorporated by reference therein."

(J.APP. 0298, R.Doc. 38)

Exhibit 1 **couldn't** have been a part of his complaint or his proposed amended complaint. Mr. Muff filed his Motion to Amend Complaint on October 7, 2021. Wells Fargo did not produce the document noted as Exhibit 1 until **November 1, 2021**. Exhibit 1 is the investigative notes of Wells Fargo employee Fabiola Navarrete which is a material document that Mr. Muff accuses Wells Fargo of failing to disclose. This is why amendments to pleadings are "freely given". In

part, it is so that discovery can proceed (or in this case, commence) to uncover evidence in support of the parties' claims and/or defenses.

## CONCLUSION

Step-son Josh presents a foundational case of elder exploitation which is a subpart of the federal regulator's anti-money laundering program as set forth by both of Mr. Muff's experts. The Iowa courts have fought this battle via the tort of conversion. The detailed facts presented by Mr. Muff against Wells Fargo Bank are mostly uncontested.

The elements of conversion are fully established. They are: 1). Ownership of the accounts greater than the defendant; 2). Exercise of dominion or control by defendant inconsistent with plaintiff's possessory rights; and 3). Damage to plaintiff.

Mr. Muff was the owner of the Hartford funds, the "Muff Corporation" funds and others (joint-tenancy funds). By law, Wells Fargo Bank is liable for conversion by the negotiation of forged checks over a two-year period totaling over $770,000. Finally, damage to Mr. Muff is set forth in the sentencing order by the criminal court for the State of Iowa (res judicata).

Appellate Case: 22-2107    Page: 62    Date Filed: 07/08/2022 Entry ID: 5175654

All elements are fully proven in this case based upon the evidence filed in Resistance to the Wells Fargo Motion for summary Judgment on Counts 1, 2 and 3. Jury questions abound regarding the additional Counts (4-6) attempted to be amended.

Wells Fargo should have known of the criminal actions as early as 2015 and had it followed its own policies and procedures concerning elder abuse involving a change in a customer's account activity (huge increases in deposits and transfers/withdrawals) this matter could have been prevented. Proof supporting expert Abernathy's report concerning Wells Fargo's neglect of regulatory guidance for anti-money laundering continues today.[3]

Wells Fargo never discovered the obvious until reported by Mr. Muff's brother Tom. At that point, Wells Fargo had a choice – disclose their findings which may have gotten this action started, or hide it and hopefully not get sued.

The Order herein appealed from is inconsistent with federal regulatory anti-money laundering standards and the state laws of conversion. Further, it supports and promotes defenses for the criminal

---

[3] Vanderford, Richard. "Wells Settles Laundering Case by SEC". *Wall Street Journal*, May 21-22, 2022 .

Appellate Case: 22-2107     Page: 63     Date Filed: 07/08/2022 Entry ID: 5175654

elements. Mr. Muff would request this case be reversed and allowed to

proceed so that the facts may be determined by the appropriate

decision-maker – the jury.

Dated: July 8, 2022

> Estate of Joseph A Muff
> By Executor, Larry Muff,
> Plaintiff


By: /s/ Gail E. Boliver
Gail E. Boliver, AT0001032
BOLIVER LAW FIRM
2414 S. Second Street
Marshalltown, IA 50158
Telephone: 641-752-7757
Facsimile: 641-752-6597
Email: boliver@boliverlaw.com

Appellate Case: 22-2107     Page: 64     Date Filed: 07/08/2022 Entry ID: 5175654

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit pursuant to Fed.R.App.P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed.R.App. 32(f), this document contains 11,978 words.

2. This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010, in Century 14-point typeface.

*/s/ Gail E. Boliver*
Gail E. Boliver

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Gail E. Boliver*
Gail E. Boliver

Appellate Case: 22-2107    Page: 65    Date Filed: 07/08/2022 Entry ID: 5175654

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 28A(h)

I certify that this brief and the accompanying Addendum were scanned for viruses using "Virustotal" and were virus-free.

/s/ Gail E. Boliver
Gail E. Boliver

Appellate Case: 22-2107    Page: 66    Date Filed: 07/08/2022 Entry ID: 5175654